This one, the docket is 519-0109 Vandalia Levee & Drainage Dist. v. Keck et al. In this case, we've allotted extra time for argument. Ms. Livingston, you're going to argue for the appellant? Yes. And then we have Ms. Manning and Mr. Osmond. Mr. Osmond. Mr. Osmond. Alright, and then we've allotted Ms. Livingston extra time on the back end, right? Taking five minutes off the front end and putting it on the back end. Okay, so you have all that down the back? Yes, ma'am. Okay. I can tell them that they are responsible for keeping up with their time as far as the 28 minutes of splitting, unless you're honoring what we do, let them know that I am. Well, I fear if you don't let them know, they'll just keep on going. I think that would be a great idea. Okay, Ms. Livingston, if you'd like to proceed, we're ready. May it please the Court, I'm here on behalf of the Vandalia Levee & Drainage District for the fourth time, and we filed notice of appeal on Frey, which will be our fifth appeal in this case. We now have a final judgment that will not be final at some point. But we're here today because after all these years, we still don't have the injunctive relief ordered by this Court in 2012. The findings of this Court were completely ignored by the trial court, multiple judges. When we came back down on remand, we had an issue of trial, and I know not all of you have been with this case. Justice Chapman actually decided two other cases related to this case as well. And so I'll try to give you an update on this. But we won at the appellate court that we proved that the levees in our exhibits that we proved that Mr. Keck had built over the last five years, which was five miles of levees, that those levees caused extreme damage and was the proximate cause of the damage to the Vandalia Levee District levees. And that is what the first appellate decision says, and that it remands it for injunctive relief consistent with the order and damages. When we got back down to the trial court, we had to deal with this issue that prior to the trial, Mr. Keck had transferred his $11 million in assets to his friend, Mr. Emmerich, and his son, John Keck, and put it into a land trust. I learned that on the witness stand when I asked him how many acres he owned on Pecan Island, and he said none. So we had to deal with ownership issues, and we did. And in 2013, the judge, Mittendorf, allowed us to bring in KLC, which was Keck Land Company at that time. Now it's called Kaskaskia Land Company. They changed their name. And they were brought in. They filed a motion to dismiss in 2013. It was denied. In 2014, they filed a motion for reconsideration. A year later, on their motion to dismiss, it was denied. Then three months later, we had a hearing. Before we had that hearing, though, the judge granted my motion for summary judgment on the issue of removing all the levies. I did a motion for summary judgment, post-judgment, saying as a matter of law, I'm entitled to have all the levies removed that are in my exhibit because that was my evidence. We had a table at trial that actually was a simulated levy, and we poured water in. We had an expert. He poured water in, and he showed with their levies, and then he removed it without their levies, and we used paper clips to pinpoint what the level on our levies were. We know that their levies are causing extreme damage to our levies. We're at a million dollars now. After the appeal, we had the worst damage we ever had. Well, they wouldn't, you know, work with us, but that's a whole other issue. At any rate, we come back down, and now we have this hearing on injunctive, scope of injunctive relief. I repeatedly say I'm standing on my evidence at trial to not retry the issues. I file a motion to exclude their expert witnesses. I'm denied. We go to this hearing, and they present their experts. One expert, KLC's expert, says, well, it can't possibly be the fault of us that there's any damage. We cause no damage whatsoever because, you know, the Vandalia Levy District levies are higher than our levies are. Yes. And that very argument was made by Judge Lackey in his decision at the trial court, and it was overturned by this appellate court because the height of our levies is irrelevant to their impact on us. They cause this backwater effect that pools and causes infrequent or frequent small storms to pool water and erode and score and undercut our levies. And we proved that they were the proximate cause. We proved with overwhelming evidence, as how Judge Chapman described it, that this was the case. So now here they are with an expert saying, we cause no damage. Yes, well, that's not the law of the case, and you don't get to present that. I impeached best I could. KLC had a witness, and in my impeachment of that witness, the witness actually admitting on the stand the appellate court is wrong. That's what I was dealing with. Now, I, who said the appellate court was wrong? KLC's expert at the April hearing before the May order. Because their levies are not impacting us at all, so their position was no levies need to be removed. My position was, here's my Exhibit No. 16, and it documents every stretch of brand-new levy that Fred Keck built in the last five years. We documented it. Ms. Hermans testified to it. Mr. Martindale relied on these are the levies when he did his modeling that was accepted by this court. And I came with my exhibits. I came with the court record, and I said, read the transcripts, read the testimony. Judge, I'm standing on the fact that I came the winner here, and the winner is with their levies there, without their levies there. And their levies need to be removed. Which ones? The ones in this exhibit. The judge really had the view that we didn't have to take out all the levies. You can have that view, but I have no scientific evidence as to where to take out levies or what levies to take out when I've got five miles of levies, five feet high, that were put in in the last five years. That was my thing. And so the judge takes it under advisement, and in May he issues an order where he says, take out 250-foot gaps, each defendant. On the very last day that an appeal could be filed, Mr. Osmond files an appeal. What is he appealing? He's appealing that his clients, who were the recipients of all of Fred Keck's GAF assets, guaranteed air freight, the recipients of all those assets are not liable here post-judgment because they weren't here. Yes, but Mr. Keck's son sat at counsel table just like Mr. Lazzaratti of Parrish did for the whole entire trial, except while he was being deposed in the divorce case over the fraudulent transfer. For two hours he was missing. The rest of the time he was there. He led the judicial site visit. And Fred testified, I gave the land to my son in a land trust. So they were there. This shouldn't be an issue. Since it was decided the year before, when he filed his appeal over Fourth of July weekend, when he filed his appeal, I filed a motion to dismiss instead of cross-appealing. I filed a motion to dismiss because it had already been decided. Appellate court said, no, this is an injunction order, and under 307 anybody can appeal an injunction any time, which is what we're doing here today. We filed motions for injunctive relief, and they were denied. Under 307 we get to be here. The defendants? Does that go to the issue of jurisdiction that's been raised by the defendants? I absolutely think it does. And so, you know, in Justice Chapman's opinion, she said in the opinion where you all hold KLC accountable due to the transfers and that they were represented at trial. The 2015 case? The 2015 case, which they took up the Supreme Court so we don't get back until 2016. Then we have judges assigned to us. They all have conflicts of interest. It takes us a year to get a judge. We finally get a judge. They file a motion for clarification and to limit issues, and they argue, well, she didn't cross-appeal the denial of the inadequacy of the injunctive relief. Therefore, she can never, ever present evidence again on anything that has to do with injunctive relief in this chancery case that's been remanded. So what do you say to that? What do I say to that? What do you say to that argument? Well, I filed a response, and my response said the injunction wasn't implemented at the time of the appeal, and I filed they filed certificates of compliance saying they were in compliance. I filed a motion, a petition under 1401 that maybe should have been called a motion for reconsideration, but at any rate it pointed out two things. One, judge, there's no specificity in this order for us to know that they had to take those down to flood elevation. There's no as-built drawings as to where they put them so that we can analyze whether or not they worked. One of them appears that it is not cleared out for the 50 feet based on their photographs and their information, and oh, by the way, we did the Manning calculation. Our expert did the Manning calculation. Here's my affidavit, and he says that those gaps are not going to reduce the flow by anything more than one and a half percent. We need you to reconsider what you've ordered here, and oh, by the way, I think it's inconsistent with the appellate court decision that is based on the levees I approved Fred Keck built that don't have permits, that were never considered what impact would have on their neighbor, and that put three and a half feet on our levees in small storm events. You need to slow down for me a little bit here. Okay. Eleven years of litigating. I understand. So with regard to Justice Moore's jurisdiction question, the issue is they raised you didn't cross-appeal this injunction. You don't think that was necessary. No, I don't think it was. At that point in time. Right, and so the only issue that was ever decided. Why did you think it was necessary at that point in time? Well, first, because it was a non-final order. It hadn't been implemented yet. It hadn't been implemented, but it had been issued. It had. Okay. It was a permanent injunction, wasn't it? I think it was a permanent injunction on the issue of prescriptive easement. But how was a permanent injunction not permanent? Well, they excite you to the field versus field case, but they leave this language out of the field case, which is 1967 Third District. It says courts of equity, however, even after the lapse of said 30-day appeal period, have jurisdiction to modify or vacate their own injunctions to meet changing conditions of fact or of law. Well, that's on a modification. Right, which I was asking for in my petition, and it was remanded after it was determined that they were liable. Now we're back in the Chancery Court, which has jurisdiction. Let me catch you right there. So you had already asked for modification when they said then, okay, we're not liable, which led to the second appeal. No. We didn't have the order with the gaps. I didn't know the judge was going to order gaps. He ordered gaps. It wasn't based on any evidence whatsoever. I'm just talking about the injunction. Right. That's the injunction. Justice Moore asked you about the permanent injunction. Right. We have a permanent injunction, and you had not asked yet, could it be modified, or you had? I had not. At what point they appealed the bottom ownership? Right. They appealed that order, and they appealed that order. Which order? The order of injunction relief that said put some gaps in. They appealed it. They complied with it. And you did not cross-appeal the order? I did not cross-appeal. Okay. And in the decision on the liability of KLC, once we get to the appellate brief, I start complaining that the injunction relief isn't working. And Justice Chapman says— Hold on. Hold on. Now, this is a complicated case. It is. We need to slow down. I get 15 minutes. I know, but we can give you a little more. So I need to understand. We have a permanent injunction. We have them saying in 2015—oh, wait a minute here. Keck says, I didn't own the ground, and there was inadequate representation. 2014. So we have this injunction that's still sitting out here, and nothing's happening. You don't really need to cross-appeal on anything at that point, do you? No, I don't. And, in fact, the rules don't require me to, and the case law doesn't require me to. So you might say it would have been a good idea, because here we are. We still don't have injunctive relief. But I did not. You did have an injunction. I did have an injunction. It had to be implemented. Okay. So, but you had an order. You didn't cross-appeal. And do you think the law says that after 30 days on that injunction, you can still move to modify it? Well, the court can modify it after that period of time, yes. And we got back down on remand. And what were we there for? An injunction. And we didn't have our injunctive relief working. And at that point, I had my evidence put together as to the gaps not working because we did another engineering study to show it. So why did you file a 1401? You know, it should have been called a motion for reconsideration, I'm sure. I think I filed a 1401 because I thought it was a final judgment because Ron had appealed it. By the way, 34 pages of complaining that our notice of appeal is inadequate because it's called a notice of interlocutory appeal. Ron's notice of appeal didn't mention any rules, including 307. So I didn't think he was appealing under 307. I thought he was appealing jurisdiction because he was a party that wasn't part of the trial. Mr. Hoffman, you're not appealing this case. You're the appellant. Oh, I agree. I was giving you the history on how we got there. Okay, so in the opinion where they are held liable, Justice Chapman says, yep, you complain about the injunctive relief being woefully inadequate, but we don't have jurisdiction to hear that because you didn't cross appeal. And she cites Rule 303A.3. And this is what that rule says. If a timely notice of appeal is filed and served on a party, any other party, within 10 days after service upon him or her, or within 30 days after the entry of that judgment, or order being appealed, or within 30 days of the entry of the order disposing of the last pending post-judgment motion, which still hasn't happened, they filed one yesterday, whichever is later may join in the appeal, appeal separately, or cross appeal by filing a notice of appeal indicating which type of appeal is being taken. He didn't identify what kind of appeal was being taken. Okay, wait a minute. Now, which rule have you cited, 303? 303A.3, which is the rule cited in the 2015 opinion. And so what I believe Justice Chapman was saying is you can appeal it at the end because it's a non-final order, but it could still be challenged at the end when you get your final order on damages. It might have been good for me to think, why don't I ask for another injunction right now, but instead I was responding to what they were filing. Okay. So then you believe that this Court still has jurisdiction to hear the issue related to the injunction? Absolutely. And this Court has decided two cases, Davis v. Baghdadi and In re Estate of Griffin, and both of those cases involve a Rule 307 appeal where the other person did not cross appeal interlocutorily, and this Court has said in both of those cases that Rule 307 states only that an interlocutory appeal may be taken from an order, not that such an appeal must be taken in order to preserve review of that order, in other words, later. And then in the Estate of Griffin, the Court says, an appeal from a final judgment draws into question all prior non-final orders and rulings which produce that judgment. That's that January order that kept us from presenting any evidence. And it goes on to say, respondent could properly wait until the conclusion of the adoption proceeding to appeal from the interim order so that the respondent is not barred from challenging the validity of the order at that time. And both of those cases deal with 303A3? No, they deal with 307, which is what Ron had filed. He filed a 307 appeal of the injunction. We did not deal with the injunctive relief. We dealt with whether or not it could be applicable to them. And that was Davis versus what? Davis versus B-U-G-H-D-A-D-I. I called it bug batting. Okay. And that's 5th District, 1983. The other case is 5th District, 1987. So, okay. Okay. I'm not trying to. Well, I know this is a lot for you for the 15 minutes. It is. It is. And thank you. Okay. Okay. Ms. Manning, you're going first. Good morning, Your Honor. Good morning. May it please the Court, I'm Clare Manning here on behalf of Parrish Holdings. Thank you, Your Honors, for the extra time. Hopefully we will not need it the way Mr. Osmond and I divided the amount.         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I'm going to take about 10 minutes because my client has the motion for summary judgment as well and Mr. Osmond will take 10 minutes and if I don't need that amount of time and I won't, I will abide by the clerk's instructions here and attempt to keep it in the appropriate time. One of the things I first want to, well, this is a case that has a long history for Ms. Livingston. My client has not been involved in this case throughout the entirety of all of the rest of all of this and I want to explain a little bit the nature of my, my client is an Illinois, simply owns Illinois land ground in a family trust, parish holdings. They were inherited their family farms from their parents and the only reason they're in this case is, is for from 2005 to 2012, 221 of the acres that they own were farmed by CAC in terms of a regular Illinois standard lease, which was a cash rep lease. In addition to holding this particular parcel of ground, they also own a great deal of, of farm ground in Fayette County in the district. So in addition to being, being part of this particular case, they own farm ground that is in the district as well and their interest here has always been finality and trying to get finality in terms of both the injunctive relief and the damages. We were, we were involved at the very beginning of this as a, as a named client, I mean, as a named party. I was not involved, I was called in on remand after the appellate court reversal. So you're here only on the summary judgment issue? No, actually I'm here on both issues because the injunction, because, because I believe there's no jurisdiction for the court to hear the injunction as well. Okay. So I'm going to argue all of it today, but, but I, I honestly think number one, the court doesn't have any longer any power to modify this injunction. I believe that the injunction was affectuated. The motion for some re-judgment, I believe that that was appropriately granted and the judge needs to be, Judge Parker needs to be upheld on that. So I hope to argue both of those issues. What about Miss Livingston's argument that the court does have power to modify an injunction? I believe the court does not have any longer any power to modify this injunction. I believe the injunction was permanent. I believe that the injunction was effectuated. That harm was done to our clients as a result of effectuating the harm. We were a party to the original proceeding and as a party to the original proceeding, obviously we were following the law of the case. The law of the case said that injunction relief was appropriate. We participated in the entirety of the proceeding. We presented evidence. We fully expected Miss Livingston to present evidence at an injunctive relief hearing. She did not present evidence. She did not present her Martindale witness at the evidentiary hearing that Judge Mittendorf held. And as a result of that, all of the evidence that she's telling you now is evidence that was not presented in front of Judge Mittendorf when he made the decision that he made in terms of the injunctive relief order that he issued. Why can't you stand on the testimony from the prior hearing where this court found that she met her burden? Well, I think what you need to do is look at what the role of the courts are in this particular case. While there was evidence presented in the trial in 2010, that evidence was not subject to a finding of fact by the trial court. So when we went back... How can you say that? What does the trial court do if it's not finding facts? Well, the trial court reversed the... The trial court did not find facts. The appellate court found the facts. The appellate court reversed the trial court in 2010. But the trial court had to have found facts in order to rule for the defendant. That's correct. Right. No, you're absolutely right. They didn't find facts. They just didn't find them the same way this court found them. That's right. But what Ms. Livingston is saying she has proven was what the appellate court stated in terms of determining ultimate facts. And then what the appellate court did is what you're supposed to do in determining, well, we don't believe that the evidence presented... We don't believe the circuit judge was right, Judge Lackey was right. So you sent it back, as an appellate court is supposed to do, for further proceedings consistent with our judgment. And that's what Judge Mittendorf did. Judge Mittendorf held a hearing, looked at all of the evidence. Judge Mittendorf looked at all of the evidence that was presented in 2010. He painstakingly went through it. He held a hearing. He allowed us to present evidence in terms of what adjunctive relief ought to be effectuated. We did not, as Ms. Livingston said, argue that the appellate court case was wrong. We hired engineers, engineers that were different than the original engineers that testified in the proceeding. And they indicated to the court what they believed ought to be done. We have in the record closing arguments on adjunctive relief during that hearing. And we were all completely surprised that Ms. Livingston did not present Martindale in order for us to figure out what exactly she wanted in terms of adjunctive relief. Still today, it's unclear what adjunctive relief she's seeking to be appropriate, other than leveling all of the levees down to ground zero that are on Pecan Island. And Judge Mittendorf said- Isn't leveling what was ordered by- I don't believe so. Okay. Why not? Because I don't think the court, I don't think that's what the court said in the 2010. I mean, I don't think that's what the court said in 2010. I think the court said send it back for us to make, for the court to make a determination as to what the appropriate adjunctive relief is. I don't think it's this court's role to determine what levees need to be taken down. And as Judge Mittendorf pointed out, there's nothing in the appellate court record and there's nothing in the facts that she presented that suggested that when the case was taken to the appellate court in 2008 and 2010, that in fact, there were no levees there. Those levees have been there for ages. It was just a question of Fred Keck having built some of them up that he should not have built them up. So the question has always been, what levees are we talking about that Fred Keck built that need to be taken down? And that's what we fully expected that hearing to entail. That's what Judge Mittendorf ordered, despite the fact that she said, I got summary judgment from Judge Mittendorf. What she really means is that Judge Mittendorf says, yes, you're entitled to summary judgment on the fact that you get adjunctive relief. Nobody argued about that. The question always was, what is the scope, the proper scope of the adjunctive relief? Now, if she had that question and you asked this, if she really believed that the court decision required, unlike Judge Mittendorf said, to be taken down to ground zero, there is absolutely no excuse that she did not file an appeal and jump on Ron Osmond's appeal when he appealed it on the question of ownership. He appealed — 40 years ago, this case was before the court. And this court could have then said, take it back, take them all down, and we would have known. This is 40 years later now. That she — Well, what I call Vandalia II was an issue of ownership. There was not the issue of the scope of the adjunctive relief, as I read. Because Ms. Livingston didn't appeal it. Well, but the issue of scope or the entitlement, I should say, to adjunctive relief seemed to have been announced by this court in 2012, what I call Vandalia I, in my knowledge. An adjunctive — It clearly says in Vandalia I, if the levies remain in place, they will continue to cause problems for the plaintiffs, thereby requiring multiple suits, which is what we have here. But — so you're saying that when it went back in 2012, the scope of the adjunctive relief was still at issue. That is what — I'm saying that — — would be short of taking them all down. Yes. I'm saying that it was remanded for a determination of damages and adjunctive relief. Monetary damages. Monetary damages and adjunctive relief. Right. So if that's true, when did the permanent injunction issue? The permanent injunction issued when it was issued by Judge Lippendorf, when he signed the order. And we were required to effectuate the adjunctive relief. We would have been a violation of the court order if we didn't poke holes, you know, 50-foot holes in our property. And, you know, Ms. Lipson makes it look like that's nothing. And then she presents this evidence, which we've never had an opportunity to contest, that says it's not appropriate, it's not solving the problem. We would disagree with that. But we've not been able to challenge that evidence because she didn't present it in the adjunctive relief hearing that Judge Lippendorf held in order to determine what the proper scope of adjunctive relief is. So we sit here today with my client having gouged two large holes in his property, you know, absolutely with an effect, which I can't really talk about because it's not evident, because there's no evidence, because we've never presented any of that, because Ms. Livingston never brought it to the trial court. She is bringing it to you all in the context of the 2010 hearing. And I think jurisprudence, from a jurisprudence point of view, this is not right. We have effectuated adjunctive relief. We were required to effectuate adjunctive relief. I didn't appeal the adjunctive relief because parish holdings needed to perform adjunctive relief. She says we don't abide by the law of the case. Of course we do. Okay. So now you've cut the holes in the levy. Yes. Okay. We have this injunction that you, your client, followed. I'm still curious about when we think about adjunctive relief and it's a creature of nonmonetary damages, irreparable harm, isn't a court still entitled to know once the holes were cut whether or not the harm has been remediated? In other words, we issue an injunction, you have to do something, and the court never gets to look at whether it was effective or not? Is that really the argument? Well, I think that any adjunctive relief, it's a primitive injunction. We had the opportunity to make all of those arguments. She had modeling data she could have presented. Our experts could have dealt with this at the hearing itself, and that she did not, it seems to me, to be a fatal flaw here. And I would suggest to you if you actually look at the record, I'm sorry, but if you actually look at the evidence that was presented that we presented with very good engineering evidence, I think you'll find comfort in the fact that there is not a problem here. I'm trying to get a timeline here because of the jurisdiction argument. Okay. And maybe my fellow justices know it better than I do, but you have your hearing and then the injunction issues, right? No. The hearing, there was an injunction that issued. Mr. Osmond moved to stay the injunction. The stay was ultimately denied. He also appealed. It was the appeal took place. There was confusion as to whether the stay would be effectuated or not. The stay was not effectuated. As soon as Judge Mittendorf denied the stay, we performed the adjunctive relief. It was only after that that she filed the 1401 petition. And when she filed the 1401 petition, we were already in court. You know, we were already in court. And it seems to me the 1401 petition does not get us anywhere. I'm sorry. I'm still having trouble with following your argument because it seems to me you had an injunction. Parish Holdings followed the injunction. Correct. You had a hearing. You had an opportunity to have that hearing prior to having to cut holes in your levies, right? We did. So you had a full hearing. You have an injunction. A court is saying, okay, this is the best we can do based on the evidence. Correct. And now your argument appears to be that, well, okay, once you issue the injunction, you can't touch it again. Is that the argument? We followed the injunction in court. So you can't modify it because you already ruled. And that seems to me, if you're having, if a court is truly trying to remediate irreparable harm, and can the court then have a hearing to see if it worked? Four years after the fact, Your Honor. Well, and then where are we with damages? There's a lot of things in the way. Where are we with damages during this entire period of time? And where are we in terms of finality? And in terms of, it seems to me that we as lawyers need to follow the rules, and we need to follow the rules of the court, and we need to follow the court orders. Ms. Livingston didn't do that through any of this proceeding through the entirety. She holds out for 2010, and she had two opportunities with two very good justices below, both Judge Mittendorf and Judge Parker, to make all of her claims. And both Judge Mittendorf and Judge Parker looked at the 2010 issues that the court had raised and determined that, in fact, that they believed that the Delph-Mel had told, that she needed to file an appeal and the permanent injunction had issued. I think they also probably were comforted by the fact of all of the evidence that was presented, that was presented on the part of the defendants that was not presented by the plaintiff. And I think you need to look at all of that before you make a determination that there may be this continuing harm, because I don't believe that she's accurate at all in terms of continuing harm. And I think if you look at the expert testimony, both in terms of the injunctive relief hearing and thereafter in terms of the damage hearing, you will understand that a lot of what she's saying is a lot of smoke and mirrors and not a lot of fact. If I might get off of the injunctive relief a bit and just talk. Is there any other questions about the injunctive relief before I move? I think there are two things that I want to address as well. Number one about the jurisdiction. I don't believe you have jurisdiction here under 307, but in terms of the way this was styled and that sort of thing. And in 304A, I've never seen an appellant come forward with three different theories of regulatory, what Supreme Court rules were actually here before. Because we're here really on 307, but we're also here on 304A and we're also here on 304B. It's kind of like we're playing ball both in St. Louis and Chicago in terms of how this case is proceeded to get to the Fifth District in this case. And I would suggest that even in your orders you said that the jurisdictional statement will clearly state what rule that you're bringing this under and plaintiff did not do that as well. In terms of the motion for summary judgment, in terms of the law for my client for parish holdings, clearly I think Judge Parker ruled squarely with the law in Illinois. My client had nothing to do with any of the construction of any of the levees that occurred here. He was simply a landowner. He had ceded control to Fred Keck. In the first lease that he had taken over, Fred Keck was not to do any damage to any of the watercourses. He had filed a counterclaim against Fred Keck in the original case. And thereafter, he was entitled to another lease with Mr. Keck. And in that case, in the second lease, the lease that took place in 2008, he had already recognized that the litigation was pending and indicated that Mr. Keck would have to cooperate with the court and abide by the court order and that kind of thing. So I think squarely in terms of the motion for summary judgment, it was well-granted. It should be granted. It should be affirmed. Should the court find that it has jurisdiction under 304A? And, of course, there was a certification of this particular question. I think really what you have here is the appellate court being a court of review in looking at what occurred below. You are not, you know, in terms of what occurred below, both those judges are entitled to deference in their opinion in terms of how they looked at the evidence, what evidence was presented, both in terms of the injunctive relief. And even on the motion for summary judgment, obviously, in terms of the facts, he's entitled to deference. But in terms of the law, it recognizes that there's no objection, but it's a pretty clear-cut case. So it's time for Mr. Osby, I think. And thank you very much for your time. MS. OSBY. They have Mr. Osby. I'm sorry? You can start at 10. Thank you, Your Honor. Ron Osby for Kaskaskia-Lincoln Counsel. Let me get right to what I think is the nub of this. This is not a complicated case to me, the status that we're in. Counsel is trying to argue in front of this Court about an injunction and a modification of injunction, and that's not why we're here. We are here because of an order entered by Judge Parker. And in that order, he did not dispose of all of the case. The case was ongoing. And it just finalized, and as counsel said, she filed an appeal on Friday on the same issues that she's now arguing on the scope of the injunction, on whether or not punitive damages, the four motions, punitive damages, and all those issues. She just filed an appeal on Friday on those issues in this Court. So this case is ongoing. The only thing that was certified to this Court under 304A was Ms. Manning's client on the issue of damages in the summary judgment. That is the only thing that's before this Court because the case has not finalized. It's a... Do you agree, Mr. Osmond, that a person who has an injunction granted or modified has the right to an interlocutory appeal under the rules? A person that has one... When a court issues an injunction... Correct. A party aggrieved by that order can file an appeal under Rule 307. Correct. So we have an order that is injunctive in nature, right? That's not even been determined yet by the trial court, Your Honor. That issue is still open in front of Judge Parker. And, in fact, Judge Parker ordered and said that there was no jurisdiction, there was no punitive damages. He has ruled upon that. But the case is still open because he has it for damages. And we were hearing damages whenever this appeal was filed. And the cause of the problem is out of the sequence and not following the rules, as Ms. Manning said. You can certainly... So you agree we have jurisdiction for the motion for summary judgment? Yes. The summary judgment order. Yes. Okay. Because that was certified by Judge Parker as a 304A. Now, I can tell you I'm not certain that that was correct because the damages issue is still there. But Judge Parker and the one... I wasn't involved in it because it wasn't my client. But he certified the 304A. Nothing else. When the appeal was filed, much to my surprise, we have the whole pamphlet again, and the whole issue that's been going on for years is that this injunction that was issued was not correct. Now, let me talk just a little bit about Judge Mittendorf. To hear opposing counsel talk about Judge Mittendorf just picked out these 50-foot gaps out of the air. When you look at the record and you look at what was presented by the two experts, the two experts were there to testify about the scope, the scope of the injunction, not about what an injunction should be issued. The appellate court said injunctive relief, and, Judge Gates, I'll get to your what I know that's bothering you in a minute, no matter what the court said. The appellate court said injunctive relief is necessary to stop blah, blah, blah, you know, continual lawsuits. Mr. Alton, may I ask you a question about those 50-foot gaps? Yes. The original levees that were on Pecom Island were there as a Pecom Island levee district. Is that correct? That's correct. Any years ago. The Pecom Island levee district, as I recall, was abandoned in 1946 because of a flood in 1946. But the old levees remained there, and Mr. Keck went in and added to those levees. Then when Judge Mittendorf ordered the 50-foot gaps, he ordered that those gaps be taken all the way down to ground level, including the original Vandalia or Pecom Island levees. Is that correct? You have excellent memory, Your Honor. That's all correct. And that goes to the heart of, I think, what's bothering Justice Gates is, that the appellate court said injunctive relief is proper. You get an injunction. And then it did exactly what it's supposed to do. And if you read the papers, mine and Ms. Manning's both, we cite the cases that did exactly what the appellate court does. They remanded back. That's redundant. They remanded it to the circuit court to take evidence about the scope of the injunction because the appellate court doesn't have that information. If the appellate court had truly believed that all the levees should be taken down, they just said it. But the truth is, there was levees there for 40 and 50 years. Some of them still existed. Some of them still there. The appellate court noted that. Circuit court noted that. At the scope of the injunction hearing in front of Judge Nittendorf, he heard evidence from the two experts, and those experts basically were there to testify not about there was no liability or no harm. That cow was out of harm. They were there, and they testified that you could lower, and they disagreed, and you could take like a foot, some of them said one of them said a foot, one of them said six inches, off the entire levee, and that would be appropriate. They had different opinions. No evidence was presented, as Ms. Manning said, just I'm standing on my evidence because the appellate court said I'm wrong and you've got to take all the levees down. It's not what the appellate court said. Logical, what happens is the appellate court issued an injunction, said an injunction, and then this is the important part. That injunction is permanent. That injunction is permanent because in the cases that are all cited, 20 of them between Ms. Manning and I, it's a permanent injunction. It was not limited in scope, and it is a permanent injunction. Now, to answer your question, Judge Gates, Justice Gates, it can be modified with an appropriate petition. There's no appropriate petition here anywhere. The 1401 that was filed was filed during the appeal. The circuit court has no jurisdiction during the appeal. Which appeal? During the second. Second appeal. My appeal. I appeal the scope and whether or not, you know, who filed it. Right. Okay. So she filed the 1401 while it was under appeal. It's elementary that there's no jurisdiction in the circuit court when an appeal is pending. So you're saying you can't file a pleading just because there's no jurisdiction? You can file a pleading. It's no good. Well, I guess. Well. Well, no, that's not. Go ahead. Well, I don't want to get objective. You know, they always tell you don't, you know, don't argue with justice. But I'm going to a little bit because. Did you file a motion to strike her pleading or something? Yes. Yes. And I pointed that out. And so but the case law is in the brief. The case law is clear that when you file one and the circuit court doesn't have jurisdiction, it doesn't then automatically spring to life when the appeal is over. So that's a no moment to this case. No, I don't know how that's relevant. Well, because there's no 1401 motion, appropriate 1401 motion been filed. And if it's a 1401 motion, that's a new pleading. It's a new case. You have a two year statute. We're now some sixteen hundred days from that. So it's really it's really just accumulation of not following the rules. And these rules are not aspirational. It's not something we aspire to. You have to follow the rules. And the appellate court in 2015 was very specific. There was no jurisdiction. Absolutely. This court said there was no jurisdiction because she failed to cross appeal on the scope of the injunction. Now, I don't know how this court can now say there is jurisdiction. So and let me just let me just briefly touch on lost track of my time. But the cases that were cited, the cases that were cited in regards to 3073, you can do it in the meantime. May I finish? Yes, you may. Thank you. Were all temporary injunctions. This was and is a permanent injunction. What do you believe is the time limit within one in within which if I want to modify an injunction, do you think there's a statute of limitations on that? To modify an injunction that's been issued and is there. Right. That you call a permanent injunction. The court issues what you and Ms. Manning determined to be a permanent injunction. That is, it's not a TRO. It's not preliminary. You've had a hearing. The complaint has been decided. Now it's permanent. What is the statute of limitations on modification? Let me answer it this way, Your Honor. There's two ways whenever you have a permanent injunction. You can certainly bring an action to enforce the injunction if you're not compliant with it. For example, if we. I didn't ask about compliance. Okay. Modification. I'm getting there. Okay. Then you can. You can apply under changed circumstances. You can apply with the proper cleaning and proper evidence to modify that injunction. What's the statute of limitations on that? I don't know that there is a statute of limitations on that, Your Honor. That's what I wanted to know. But it requires not. Listen. She stood on the same evidence that Judge Nettendorf heard, that Judge Parker heard, presenting no new evidence of anything. And so now then she wants to come back in this case and say that based upon the same evidence that Judge Nettendorf and Judge Parker heard, and well-written opinions, and if you look at the evidence that was considered all of it, and she now wants to say the original scope of the injunction ordered by Judge Nettendorf was wrong, and I get to modify it. If she wants to and she has evidence tomorrow, which probably she will, and she thinks that it needs to be modified, she can certainly file the pleas, and if she has the evidence to do so, I believe we can have a hearing at the trial court level and she can present her evidence to show that there is not more damage, that, you know, not just that she just doesn't agree with it. She has to have evidence to show. Yeah. Okay. We're getting a little far afield what she has to do in the future. Okay. Thank you, Your Honor. Thank you, Mr. Osmond. Okay. Ms. Livingston, I'm going to give you, like, two extra minutes because of Mr. Osmond going over. Thank you. I appreciate it. What Mr. Osmond just said is exactly what I did do. When I – when we came back, they filed a motion to clarify and limit, and the judge took it under advisement for nine months. My response was, I have evidence that this hasn't worked. I now have evidence that it didn't work. I have new evidence. I'm asking you to consider my new evidence at a trial. Nine months later, he issues an order that says, nope, you can't present any more evidence. I can't appeal that order. And when you say, nope, you can't do that, which order are you referring to? January 30th of 2018 said you can only present evidence of damages. Okay. I'll live with that. Then we got a schedule for – Okay. So you didn't appeal the January order. I could not. There would be no way to do it. And you didn't ask for an order. I did not. Instead, when we were allowed dispositive motions, that's exactly what I did, what he just said. I filed dispositive motions with all of my evidence that it didn't work, with all of my evidence of what levies existed prior to – when it was 1943, the prescriptive easement went in in 65. I presented all the evidence on that. I presented all the evidence in every theory you could. I asked for reconsideration. I refiled my 1401 petition. I brought the evidence. And the evidence I brought was brand-new evidence because they were arguing no damages whatsoever. And in arguing no damages whatsoever, their expert confirmed that the gaps had absolutely no impact whatsoever to return flow. His opinion was you don't need to return flow because there's no damages. By the way, it's interesting that Mr. Osmond has a right to use 307 to appeal that his client isn't liable because it's in an injunction order. But I don't have a right to appeal when I file four dispositive motions showing the evidence, new evidence, not just my old evidence, that the evidence of this Court's opinion hasn't been followed, but the new evidence that those gaps didn't work. And, in fact, my new evidence is you could put in 5,000-feet gaps and you still don't stop harming us. The evidence that we presented at trial was with levies and without levies. What levies? The ones Fred Peck built that we documented. I have a question. I'm going to move you off that in one second. Okay. The summary judgment issue, Ms. Manning's client, the Parish Holdings, they were never owners of this property. They were merely… They were the owners of the property. I'm sorry. They were never involved. They let Mr. Peck arm the… Right. Do you have any evidence that they were involved with the levy system, knew about it? That's a pretty interesting question. Because in the first opinion, Judge Chapman indicated that Parish Holdings had ownership with Keck, and they filed a motion to request and made me admit that it was. But here's interesting. When you read their brief, what Ms. Manning says is, oh, no, there was no ownership here. Instead, Mr. Lazzaretti had ownership in Keck Marsh, which is different. Keck Marsh is the company that they leased the hunting leases through. In other words, he really did know about the levies. But where is the question of fact? It is a question of fact. So how could you give… Let me finish this. Where is the question of fact that they had some participation, that they knew about these levies? What makes them liable? All right. First, what makes them liable is the 2012 decision that found them liable. They have the first stretch of levies. I don't know if it's 10,000 feet or whatever it is. Their levies need to be removed first so we can get our water to flow through there. Okay. So you're saying that the 2012 decision of this Court found as a matter of law that they were liable. That's exactly right, that they were liable and then the judge dismissed them. It didn't allow any evidence to be presented that the gaps didn't work or that I now need more injunctive relief. I've never done a one and done injunctive relief case, and I've been doing them for 30 years. Okay. Let me ask you this. Why isn't it… You said you just filed a notice of appeal. Why isn't all of what you're talking about, except for the 304A, why isn't all of that part of what will ultimately, hopefully, be a final disposition of this case? Why won't we take that all up? Everything you're talking about, why won't you take this up? The whole point of equity is that we get relief. And what we've been able to prove is… Why won't we do that in a final judgment? It won't be a final judgment because if you guys give me tinnitus, he'll appeal whatever I get, and if I don't get them, I'll appeal whatever they are. The judge cut us off five years of damages because he said, once that injunctive relief was implemented, you don't get damages. But you won't even let me prove that it didn't work so that I can show you my damages. I did a motion for summer judgment. I had affidavits from my district volunteer board members. We're trying to protect 40,000 acres of farmland here. More than that, 50,000 peripherally, too. And our farmers have suffered millions of dollars of damages while our levies have failed. This is a court of equity that we have gone to. We filed this as O-H-C-H. We didn't even ask for damages until we amended our complaint at trial because my people weren't interested in damages. They wanted the levies down so they could continue to fix their levies and maintain them. I convinced them otherwise. I'm glad I did. Leveson, what about the question I asked Mr. Osmond about the fact that these levies were from an original Pecan Island levy district that was there before 1946? Those old levies are still there. Right. Why are you wanting those levies removed now? I'm not. The 1943, I think it was, levies that had grown in order, of course. As I understand it, the flooding that occurred when the levy district was abandoned, the Pecan Island levy district, was in 1946. Okay, I thought it was 43, but whatever it was, so our prescriptive right to flood, whatever, was washed away, came in in 1966? Well, that time period began at that 1946 flood. Right. And so 20 years of flooding gained that prescriptive right. That's what our 2012 decision said. That's right. Is that right? That's right. And the prescriptive right continued. But nothing about that said that those levies, on the original Pecan Island levies, had to be removed. I agree. And we didn't ask for that. So you're not asking for that now? I'm not. I'm not asking that the remnants that were left over be removed. I'm asking that the stretches that we identified in Exhibit 15 and 16, and 15 shows you the whole perimeter, and it shows you, here's 100 feet that's new, here's 200 feet that's new, here's 500 feet that's new, here's 1,000 feet that's new. I'm only asking that the new portions that he rebuilt be removed. That's what I'm asking. And that's what our evidence was at trial, with these levies in this exhibit, with those levies, without those levies. You put three and a half feet up. But in the permanent injunction, you were not granted that relief. In a permanent injunction, and I don't know that it matters if it's permanent or preliminary, it was an injunction that was entered that said, let's do the gaps. We don't get to look at whether the gaps worked. And that injunction order was on prescriptive easement only. It did not deal with the issue of nuisance that I also want in the appellate court. There was nothing I want to – I have to address this. It's very interesting to me the rules are being violated. The only rule being violated here is that the law of the case is not being followed, because when we got down on remand from 2012, they presented experts that said the appellate court is wrong. No levies need to be removed whatsoever. Oh, maybe you can skim a couple inches off. Okay? They were saying your guy was wrong. We did new modeling, and your guy was wrong. I didn't bring my witness, because my witness's information, which I gave them to look at, they wanted to attack. It was already accepted by this appellate court. Why should that be attacked? So they need to present evidence that the appellate court was wrong, but I don't get to present evidence that the trial court was wrong in the case of Chantry. A motion for reconsideration says you can have a motion for reconsideration when you have new facts. I have new facts. We've done a new study. The gaps didn't work. Even 5,000-feet gaps don't work. We also showed that the law wasn't being followed. And the courts of equity, I cite you to Supreme Court cases, if you look at my motion for reconsideration to vacate the January order, where the Supreme Court talks about how equity must be done, and there is no abuse of discretion in that situation. It's de novo, because, my God, your job as a court of equity is to bring about equity. And if there are changed facts or changed circumstances or something didn't work, then you come back and do it. In environmental, we always have let's do this and see what works, let's do this and see what works. Here we know what will work. Remove the brand-new levies put in in the last five years before trial. Remove those levies. Those are the levies that we ask to be removed. And when they say, she didn't present anything, I had the trial record sitting there. The judge didn't read it. They all extensively reviewed these. Okay, he didn't read it. He didn't want to read it. He didn't want to hear about my exhibit. He wanted to hear about, you ought to be able to take less. You'll have to do a study to do that. We've now done the study. The study says less won't work. And their experts agree that the gaps are totally ineffective to return flow. And the fact that our damages have increased exponentially show you that after 15 years of having our levies eroded by small storm events that pool on us and backwater effect on us up to three-and-a-half feet on our levies have really caused us damages. And we can barely keep up with our repairs at this point. Our farmers have suffered millions of dollars in damages losing their crops because our levies are failing. And our levies, we already proved, are approximately caused failures by their levy system. It's a system. And this system was built by Fred Keck, and this is the system. And we only documented the new stretches. If he left old levies, we didn't touch those in our analysis. If he rebuilt them higher, we did because we have the evidence that they've been rebuilt. So you indicated at the beginning that the case has been heard, right? The case has been heard. The case has now been heard. Which case? This whole thing. Oh, yes. We presented all of our motions as a matter of law in the Judgment Item on February 13th of this year. And so we appealed under 307 that we would deny the ability for an expanded injunctive review. Stop. Please stop. Okay. I'm trying to get from 307 to where the case is finally disposed of and you have the right to appeal everything. Which he just filed a motion for reconsideration last night. So our appeal. I have a question. Right. My question is, you appealed under 307 because you believe you have a right to appeal on the injunctive relief. Yes. Okay. My question to you is, have you now, has the case now been heard on all these issues that you're arguing about, all the evidentiary issues? It was heard in our motions that were denied on February 19th. The final order has nothing to do with that order. The final order is on damages. Okay. And only on damages. So the final order on injunctive relief. Is the February 13th, 2019 order. That's the order we appealed. And that's the order. That's the final order on the injunctive relief. It is the final order on the injunctive relief. It says you may not have any more injunctive relief. It says there are witnesses saying no injunctive relief, few gaps is good enough to challenge this court's opinion that had already been entered. Okay. Thank you very much. Thank you. Okay. We're going to take a recess. This matter has been taken under advisement. Thank you, counsel. I know this is an important case and we will treat it as such. Thank you. Thank you.